UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBRA L. COBB,

    Plaintiff,

v.                                                    Case No. 1:09-cv-51
                                                    Hon. Robert J. Jonker

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB). For the reasons stated below, I recommend that this decision be reversed and remanded for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

        Plaintiff was born on April 2, 1957 (AR 104).[1] She attended, but did not complete, the ninth grade (AR 565). Plaintiff alleged a disability onset date of May 8, 1999 (AR 104). Plaintiff had previous employment as a hospital patient care assistant, a house cleaner and dry cleaning/laundry worker (AR 133-36, 569-70). Plaintiff injured her left arm and neck while moving a patient (AR 571). Later, she developed problems with her right arm and suffered from depression, goiter, a hernia and stomach problems (AR 571-83). After administrative denial of plaintiff's claim,

---

[1] Citations to the administrative record will be referenced as (AR "page #").

an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a partially favorable decision on August 16, 2007, in which he concluded that plaintiff was disabled beginning on July 1, 2002 and ending on November 1, 2005 (AR 20-43). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not

disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of May 8, 1999 (AR 24). At step two, the ALJ found that at all times relevant to the decision, plaintiff suffered from the following medically determinable impairments: degenerative disc disease of the cervical spine with radiculopathy; a history of hyper thyroidism with remaining multinodular goiter; and a depressive disorder (AR 24). The ALJ found that the impairments, in combination, were severe (AR 24). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1(AR 26). The ALJ determined that plaintiff suffered from disabling impairments for a closed period from July 1, 2002 through November 1, 2005.

### A. Plaintiff's condition prior to July 1, 2002

The ALJ decided at the fourth step that prior to July 1, 2002, plaintiff had the residual functional capacity (RFC) to perform the following work related activities:

> to lift and carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for six out of eight hours, and sit for six hours in an eight-hour workday. With her left upper extremity alone, the claimant could reach and carry only 10 pounds occasionally and 5 pounds frequently, occasionally reach, and occasionally perform gross and fine manipulation. The claimant was precluded from reaching at or above shoulder level with the left upper extremity. She could occasionally turn her head and neck. Mentally, the claimant could perform simple and detailed work.

(AR 26). With these limitations, the ALJ found that at plaintiff was unable to perform her past relevant work (AR 34).

At the fifth step, the ALJ determined that plaintiff had the RFC to perform a range of light work in the national and local economy (identified as Lansing, Michigan), including counter clerk (490,000 national positions and 900 local positions) and conveyor belt bakery worker (140,000 national positions and 300 local positions), as well as the sedentary unskilled occupation of call out operator (570,000 national positions and 800 local positions) (AR 36). Accordingly, the ALJ determined that plaintiff was not disabled prior to July 1, 2002 (AR 36).

### B. Plaintiff's condition from July 1, 2002 through October 31, 2005

The ALJ concluded that from July 1, 2002 through October 31, 2005, plaintiff's spinal impairment equaled Listing 1.04A (AR 36). This Listing provides as follows:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.04A. The ALJ relied upon the testimony of medical expert, Dr. Joseph Jensen, that plaintiff's spinal impairment equaled Listing 1.04A, based upon plaintiff's continued pain, atrophy, and the positive physical findings as noted by Dr. Theodore delaCruz of Lansing Neurosurgical Associates (AR 36, 266-71, 617-34). Specifically, Dr. delaCruz found that plaintiff suffered from hyperreflexia and a positive Hoffman's sign (AR 36, 266-71). Accordingly, the ALJ found that plaintiff was under a disability as defined by the Social Security Act during this time frame.

5

## C. Plaintiff's condition beginning November 1, 2005

The ALJ determined that plaintiff's medical improvement occurred as of November 1, 2005 (AR 38). In reaching this determination, the ALJ relied on Dr. Jensen's testimony that an EMG taken in November 2005 indicated that plaintiff had pain, but there was no evidence of radiculopathy (AR 631-32). On November 14, 2005, an EMG of plaintiff's upper left extremity was normal, demonstrating no cervical radiculopathy (AR 38, 431-33). At an examination on May 30, 2007, a consultative neurologist, Elaine Koutainis, M.D., stated that plaintiff's EMG "did not show any sign of nerve root disease," that plaintiff had no atrophy, and that she demonstrated normal deep tendon reflexes (AR 38, 508-11). The ALJ also referred Dr. Ved Vyas Gossain's notes from April 2004 that plaintiff had bilaterally symmetrical reflexes in the upper extremities (AR 38, 240). The ALJ noted that plaintiff's hyperreflexia (previously diagnosed by Dr. delaCruz) no longer existed and that "[t]hese signs and symptoms establish medical improvement" (AR 38).

The ALJ further explained:

> As discussed, I found that the claimant's spinal impairment equaled listing 1.04A based on the medical expert's testimony, and the medical expert cited hyperreflexia, a positive Hoffman's sign, muscle weakness, and atrophy. As many of those signs are no longer present, the claimant no longer equals Listing 1.04A. And the EMG at Exhibit 14F, p. 12 [AR 433] is affirmative evidence of improvement. As noted, the consultative neurologist stated that the EMG "did not show any sign of nerve root disease that could come from DJD [degenerative joint disease] compressing on a nerve root" (Exhibit 16F, p. 4) [AR 511]. But nerve root compression is the basis for Listing 1.04A.

(AR 38). Based on these findings, the ALJ concluded that "[t]he medical improvement that has occurred is related to the ability to work because the claimant no longer has an impairment or combination of impairments that meets or medically equals the same listing on which the award of disability status was based (20 CFR 404.1594(c)(3)(i))" (AR 38).

6

Beginning November 1, 2005, the ALJ found that plaintiff had the RFC:

> to lift and carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for six out of eight hours, and sit for six hours in an eight-hour workday. With her left upper extremity alone, the claimant can lift and carry only 10 pounds occasionally and 5 pounds frequently, and she can only occasionally perform fine and gross manipulation. The claimant can occasionally reach with the left upper extremity, and she can occasionally reach at or above shoulder level with the left upper extremity. She can occasionally turn her head and neck. Mentally, the claimant can perform simple and detailed work. With the exception of reaching at or above shoulder level, this is the same residual functional capacity as Finding #5 [i.e., prior to July 1, 2002].

(AR 38). With these limitations, the ALJ found that plaintiff was unable to perform her past relevant work (AR 42).

At the fifth step, the ALJ determined that plaintiff had the RFC to perform the same types of work as prior to July 1, 2002 (i.e., light work as a counter clerk (490,000 national positions and 900 local positions), conveyor belt bakery worker (140,000 national positions and 300 local positions) and sedentary work as a call out operator (570,000 national positions and 800 local positions)) (AR 36, 42). Accordingly, the ALJ determined that beginning on November 1, 2005, plaintiff has been capable of making a successful adjustment to work that exists in significant numbers in the national economy and was not disabled (AR 42).

### D. Summary

To summarize, the ALJ found that plaintiff was disabled under the Social Security Act for a closed period beginning on July 1, 2002 and ending on November 1, 2005, and issued a partially favorable decision awarding benefits for that time period (AR 43).

## III. ANALYSIS

Plaintiff raises three issues on appeal.

### A. Is the submitted MMPI (Minnesota Multiphasic Personality Inventory) new and material evidence necessary to fully evaluate all of plaintiff's impairments?

At plaintiff's July 26, 2007 administrative hearing (AR 605),[2] her counsel raised the issue of obtaining a psychological examination based upon comments made by Dr. Koutainis in her May 2007:

> It is my estimation that this is a chronic pain individual that is coping poorly with any level of pain. A MMPI would indicate if her reports of pain were valid and give a personality profile. This would help assess the validity of all the pain she presents with in [sic] most of the examination file.

(AR 511). The ALJ felt that a psychological examination performed in 2007 would not "have any worth" because plaintiff's last insured date for DIB was December 31, 2004 (AR 21, 605-6). The ALJ's decision addressed plaintiff's request for a psychological examination as follows:

> Because the claimant's neurological examination failed to explain her symptoms, the recent consultative examiner recommended a Minnesota Multiphasic Personality Inventory (MMPI). In May 1999, Dr. R. Seeke stated: "Cannot rule out psychosomatic component at this time" (Exhibit 7F, p. 93). In February 2002, Dr. Ronan assessed "somatic dysfunction" (Exhibit 7F, p. 29). At the hearing, the claimant's representative raised the possibility of a somatoform disorder. The medical expert acknowledged a pain syndrome, but also noted that it is based on the cervical disc problem. And, as discussed later, treating physicians ordered treatment for physical, not mental, conditions. The medical expert acknowledged that the claimant's symptoms of pain and weakness "should be looked into." But, as I explained at the hearing, because there is a medically determinable physical impairment that explains some of the claimant's symptoms, a somatoform disorder is unlikely. And I award a closed period of disability based on a physical impairment.

---

[2] This was plaintiff's third administrative hearing, the first two being held on September 28, 2006 and April 30, 2007 (AR 551-602).

8

(AR 25).

After the ALJ issued the partially favorable decision, plaintiff's counsel arranged to have a psychologist examine plaintiff and perform a mental RFC assessment (AR 522-29). The record reflects that plaintiff saw Douglas W. Bentley, Ed. D., in October and November 2007, approximately two months after the ALJ's decision (AR 522-29). In his report, Dr. Bentley stated that he commenced treatment with plaintiff on October 19, 2007 and ended treatment on November 5, 2007 (AR 524). Dr. Bentley performed a psychological evaluation of plaintiff, which included an MMPI (AR 522-29). Based upon this evaluation, Dr. Bentley concluded that plaintiff was "totally disabled" (AR 522-29). The examination results were submitted to the Appeals Council on or about February 1, 2008 (AR 521-29).

Plaintiff seeks a sentence-six remand to allow the ALJ to review this report. In addition, plaintiff points out errors that could provide the basis for a sentence-four remand. Specfically, the ALJ erred by improperly excluding consideration of her psychological symptoms, making a medical judgments outside of the administrative record, and determining that the MMPI test as suggested by Dr. Koutainis "is irrelevant because it is to be taken after the date last insured" for DIB. Plaintiff's Brief at 9-14. Plaintiff also contests the ALJ's determination that her "date last insured" was December 31, 2004. *Id.*

Section 405(g) authorizes two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing the decision of the Comissioner (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the Secretary (sentence-six remand). *See Faucher v. Secretary of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994).

9

When a plaintiff submits evidence that has not been presented to the ALJ, the court may consider the evidence only for the limited purpose of deciding whether to issue a sentence-six remand under 42 U.S.C. § 405(g). *See Sizemore v. Secretary of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir.1988) (per curiam). Sentence six provides that "[t]he court . . . may at any time order the additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is <u>material</u> and that there is <u>good cause</u> for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g) (emphasis added).

For purposes of a sentence-six remand, evidence is new only if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001), quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990). "A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster*, 279 F.3d at 357. Good cause is shown for a sentence-six remand only "if the new evidence arises from continued medical treatment of the condition, and was not generated merely for the purpose of attempting to prove disability." *Koulizos v. Secretary of Health and Human Servs.*, 1986 WL 17488 at *2 (6th Cir. Aug. 19, 1986). In order for a claimant to satisfy the burden of proof as to materiality, "he must demonstrate that there was a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore*, 865 F.2d at 711. The party seeking the remand bears the burden of demonstrating that the good cause and materiality requirements are met. *Hollon ex rel. Hollon v. Commissioner of Social Security*, 447 F.3d 477, 483 (6th Cir. 2006). In a sentence-six remand, the court does not rule in any way on the

When a plaintiff submits evidence that has not been presented to the ALJ, the court may consider the evidence only for the limited purpose of deciding whether to issue a sentence-six remand under 42 U.S.C. § 405(g). *See Sizemore v. Secretary of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir.1988) (per curiam). Sentence six provides that "[t]he court . . . may at any time order the additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is <u>material</u> and that there is <u>good cause</u> for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g) (emphasis added).

For purposes of a sentence-six remand, evidence is new only if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001), quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990). "A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster*, 279 F.3d at 357. Good cause is shown for a sentence-six remand only "if the new evidence arises from continued medical treatment of the condition, and was not generated merely for the purpose of attempting to prove disability." *Koulizos v. Secretary of Health and Human Servs.*, 1986 WL 17488 at *2 (6th Cir. Aug. 19, 1986). In order for a claimant to satisfy the burden of proof as to materiality, "he must demonstrate that there was a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore*, 865 F.2d at 711. The party seeking the remand bears the burden of demonstrating that the good cause and materiality requirements are met. *Hollon ex rel. Hollon v. Commissioner of Social Security*, 447 F.3d 477, 483 (6th Cir. 2006). In a sentence-six remand, the court does not rule in any way on the

correctness of the administrative decision, neither affirming, modifying, nor reversing the Commissioner's decision. *See Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991).

At first blush, it would appear that plaintiff has not shown good cause for submitting Dr. Bentley's report until after the ALJ issued a decision. Rather, it appears that the report was generated merely for the purpose of attempting to prove disability. *See Koulizos*, 1986 WL 17488 at *2. However, because the ALJ improperly excluded consideration of plaintiff's psychological symptoms, the court concludes that the report may be relevant.

"Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-111 (2000). Here, the ALJ found that plaintiff had a medically determinable impairment, a depressive disorder, which when combined with her other impairments, constituted a "severe impairment" under the Act (AR 24). The ALJ noted that on May 27, 1999, plaintiff's physician, R. Seeke, D.O., could not rule out a psychosomatic disorder, and that in February 2002, another physician, A.J. Ronan, D.O., assessed plaintiff as suffering from a somatic dysfunction (AR 25, 287, 351). The ALJ also noted that the medical expert at the administrative hearing acknowledged that plaintiff suffered from a pain syndrome, but attributed that to a cervical disc problem (AR 25). Without citing any medical sources, the ALJ concluded that "because there is a medically determinable physical impairment that explains some of the claimant's symptoms, a somatoform disorder is unlikely" (AR 25).

Under these circumstances, the ALJ's decision to exclude consideration of a documented psychological condition (i.e., a somatoform disorder) was not supported by substantial evidence. The Commissioner's decision must be based on the testimony and medical evidence in

11

the record rather than the ALJ's independent medical findings. *See Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) (as this Court has counseled on many occasions, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings); *Manso-Pizarro v. Secretary of Health and Human Services*, 76 F.3d 15, 17 (1st Cir. 1996) ([w]ith a few exceptions . . . an ALJ, as a lay person, is not qualified to interpret raw data in a medical record).

Assuming that the ALJ should have considered and investigated the extent of plaintiff's somatoform dysfunction or disorder, an additional question arises as to the relevant time period for determining the existence of such a disorder. The ALJ apparently concluded that Dr. Koutainis' suggestion that plaintiff could benefit from an MMPI in May 2007 was irrelevant because plaintiff's last insured date was December 31, 2004. In this appeal, plaintiff contends that her last insured date was extended after December 31, 2004 by three years and three months, due to her period of disability (from July 1, 2002 through November 1, 2005).

For plaintiff to be insured for DIB, she must satisfy the 20/40 test, which "requires that plaintiff have at least 20 quarters of coverage in a 40 quarter period ending with the quarter that [she] allegedly became disabled. *See* 20 C.F.R. § 404.130(b)(2)." *Ardito v. Barnhart*, 278 F.Supp.2d 247, 254 (D. Conn. 2002). Plaintiff relies on 20 C.F.R. § 404.130(f), which provides in pertinent part that:

> In determining the 40–quarter period . . ., we do not count any quarter all or part of which is in a prior period of disability established for you, unless the quarter is the first or last quarter of this period and the quarter is a QC [quarter of coverage]. However, we will count all the quarters in the prior period of disability established for you if by doing so you would be entitled to benefits or the amount of the benefit would be larger.

20 C.F.R. § 404.130(f). *See, e.g., Evans v. Shalala*, No. 92-36823, 1993 WL 181371 at *2 (9th Cir. May 27, 1993) ("[i]n determining the last insured date, prior periods of disability are excluded"

12

citing §§ 404.130(f) and 404.320). Plaintiff contends that § 404.130(f) extended her insured status for an additional three years and three months, that this additional time would extend her insured status beyond the date of Dr. Bentley's examination in November 2007, thus making the doctor's examination relevant to the disability determination. Defendant does not address this rather complex legal and factual issue.

Under these circumstances, this matter should be reversed and remanded pursuant to sentence four of § 405(g). On remand, the Commissioner should address plaintiff's objection that her last insured date extended beyond December 31, 2004. Then the Commissioner should determine whether plaintiff suffered from a somatoform disorder or other psychological condition before her last insured date. Finally, if the last insured date extends through November 5, 2007, then the Commissioner should review Dr. Bentley's report.[3]

      **B.**      **Is there substantial evidence to support the ALJ's determination that the condition of the claimant has improved to the point she is capable of substantial gainful activity as of November 2005?**

Plaintiff's claim is construed as a "closed period case," i.e., one in which the ALJ determines that the claimant was disabled for a specific period of time that commenced and ended prior to the date of the ALJ's decision. *See, e.g., Pickett v. Bowen*, 833 F.2d 288, 289 n. 1 (11th Cir. 1987). The medical improvement standard applies to closed period cases. *See Shepherd v. Apfel*, 184 F.3d 1196, 1198, 1200 (10th Cir. 1999) (medical improvement standard as defined in 20 C.F.R. §§ 404.1594(b)(1) and 416.994(b)(1)(i) applies to closed period cases); *Long v. Secretary of Health and Human Servs.*, No. 93-2321, 1994 WL 718540 at *2 (6th Cir. Dec. 27, 1994) ("In order to find

---

[3] Because this matter is being reversed and remanded under sentence four, it is unnecessary to address plaintiff's separate request for a sentence six remand.

13

a closed period of disability, the Secretary must find that at some point in the past, the claimant was disabled and that, at some later point in the past, he improved to the point of no longer being disabled"); *Jones v. Shalala*, 10 F.3d 522, 524 (7th Cir. 1993).

"Medical improvement" is defined in 20 C.F.R. § 404.1594(b)(1) as follows:

> Medical improvement is any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s) . . .

Objective medical evidence must show a discrete improvement in the claimant's condition which allows the ALJ to conclude that the claimant can perform substantial gainful activity. *See Buress v. Apfel*, 141 F.3d 875, 880 (8th Cir. 1998).

In his brief, defendant cites the eight step sequential analysis for determining whether a claimant's disability continues or ends, 20 C.F.R. § 404.1594(f). Defendant's Brief at 5. The regulations set forth this analysis as follows:

> To assure that disability reviews are carried out in a uniform manner, that decisions of continuing disability can be made in the most expeditious and administratively efficient way, and that any decisions to stop disability benefits are made objectively, neutrally and are fully documented, we will follow specific steps in reviewing the question of whether your disability continues. Our review may cease and benefits may be continued at any point if we determine there is sufficient evidence to find that you are still unable to engage in substantial gainful activity. The steps are as follows. (See paragraph (i) of this section if you work during your current period of entitlement based on disability or during certain other periods.)
>
> > (1) Are you engaging in substantial gainful activity? If you are (and any applicable trial work period has been completed), we will find disability to have ended (see paragraph (d)(5) of this section).
> >
> > (2) If you are not, do you have an impairment or combination of impairments which meets or equals the severity of an impairment

14

listed in appendix 1 of this subpart? If you do, your disability will be found to continue.

(3) If you do not, has there been medical improvement as defined in paragraph (b)(1) of this section? If there has been medical improvement as shown by a decrease in medical severity, see step (4). If there has been no decrease in medical severity, there has been no medical improvement. (See step (5).)

(4) If there has been medical improvement, we must determine whether it is related to your ability to do work in accordance with paragraphs (b)(1) through (4) of this section; *i.e.*, whether or not there has been an increase in the residual functional capacity based on the impairment(s) that was present at the time of the most recent favorable medical determination. If medical improvement is *not* related to your ability to do work, see step (5). If medical improvement *is* related to your ability to do work, see step (6).

(5) If we found at step (3) that there has been no medical improvement or if we found at step (4) that the medical improvement is not related to your ability to work, we consider whether any of the exceptions in paragraphs (d) and (e) of this section apply. If none of them apply, your disability will be found to continue. If one of the first group of exceptions to medical improvement applies, see step (6). If an exception from the second group of exceptions to medical improvement applies, your disability will be found to have ended. The second group of exceptions to medical improvement may be considered at any point in this process.

(6) If medical improvement is shown to be related to your ability to do work or if one of the first group of exceptions to medical improvement applies, we will determine whether all your current impairments in combination are severe (see § 404.1521). This determination will consider all your current impairments and the impact of the combination of those impairments on your ability to function. If the residual functional capacity assessment in step (4) above shows significant limitation of your ability to do basic work activities, see step (7). When the evidence shows that all your current impairments in combination do not significantly limit your physical or mental abilities to do basic work activities, these impairments will not be considered severe in nature. If so, you will no longer be considered to be disabled.

(7) If your impairment(s) is severe, we will assess your current ability to do substantial gainful activity in accordance with § 404.1560. That is, we will assess your residual functional capacity based on all your current impairments and consider whether you can still do work you have done in the past. If you can do such work, disability will be found to have ended.

(8) If you are not able to do work you have done in the past, we will consider one final step. Given the residual functional capacity assessment and considering your age, education and past work experience, can you do other work? If you can, disability will be found to have ended. If you cannot, disability will be found to continue.

20 C.F.R. § 404.1594(f).

Although defendant's brief listed the elements of the eight step sequential analysis, defendant did not demonstrate that the ALJ followed this analysis. The court notes that the ALJ's decision did not refer to the eight step sequential analysis, citing only §§ 404.1594(f)(2) and (8) (AR 38, 42). While the ALJ considered medical improvement under § 404.1594(b)(1) (a part of the eight step sequential analysis required by § 404.1594(f)(3)), he did not discuss medical improvement in the context of the analysis (AR 38).

The ALJ's failure to articulate findings under the eight step sequential analysis is grounds for reversal and remand. As the court observed in *Estep v. Astrue*, No. 2:08-cv-559, 2009 WL 292320 (S. D. Ohio Sept. 8, 2009):

> Clearly, 20 C.F.R. § 404.1594 is not just a rule of convenience or orderly process. It is derived from an important substantive right, created by statute, which is enjoyed by a claimant receiving disability benefits - the right not to have those benefits terminated unless there is substantial evidence showing that, as a result of relevant medical improvement in the claimant's condition, the claimant is now able to work. This is clearly the type of "important procedural safeguard" which, under [*Wilson v. Commissioner*, 378 F.3d 541, 546 (6th Cir. 2004)], cannot lightly be disregarded, and the violation of which will ordinarily lead to a remand.

*Estep*, 2009 WL 292320 at *4. *See Wilson*, 378 F.3d at 546 (court determined that to recognize "substantial evidence" as a defense to non-compliance with a Social Security regulation which provided a mandatory procedural protection, "would afford the Commissioner the ability to violate the regulation with impunity and render the protections promised therein illusory"). "The general administrative law rule, after all, is for a reviewing court, in addition to whatever substantive factual or legal review is appropriate, to 'set aside agency action . . . found to be . . . without observance of procedure required by law.' Administrative Procedure Act, 5 U.S.C. § 706(2)(D) (2001)." *Wilson*, 378 F.3d at 546.

The ALJ failed to follow the eight step sequential analysis required by § 404.1594(f) for determining whether plaintiff's disability continued. Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), for a re-evaluation under the eight-step sequential analysis.

> **C.** **Did the ALJ fail to assess plaintiff's advanced age as of the date of her 50th birthday on April 2, 2007 when applying the vocational rules?**

Plaintiff contends that the ALJ failed to properly evaluate plaintiff under the medical-vocational guidelines. The medical-vocational guidelines or grids "take account only of a claimant's 'exertional' impairment, that is 'an impairment which manifests itself by limitations in meeting the strength requirements of jobs[.]' 20 C.F.R., Part 404, Subpt. P, App. 2 § 200.00(e)." *Abbott*, 905 F.2d at 926. An ALJ may use the grids, rather than expert testimony, to show that a significant number of jobs exist in the economy when the claimant's characteristics fit the criteria of the guidelines. *Siterlet v. Secretary of Health and Human Servs.*, 823 F.2d 918, 922 (6th Cir. 1987). *See*

17

*Bohr v. Bowen*, 849 F.2d 219, 221 (6th Cir. 1988) ("the grids are a shortcut that eliminate the need for calling in vocational experts").

The grids only apply to a claimant when all factors (i.e., age, work experience, physical ability and education) meet the requirements as set forth in the grids. "In general, where the characteristics of the claimant exactly match the characteristics in one of the rules, the grid determines whether significant numbers of other jobs exist for the person or whether that person is disabled." *Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003). As the Sixth Circuit explained:

> The grid comes into play only when the claimant's characteristics precisely coincide with the grid. In any other situation the grid is used at most for guidance in the disability determination. When the claimant does indeed match one of the grid's patterns, then all the grid does is announce that substantial gainful work in the national economy is available for that particular individual; in other words, once a finding is made that the individual can do light work, for example, the grid operates to declare that light work is available.

*Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 535 (6th Cir. 1981).

Defendant asserts that the ALJ refuted plaintiff's claims at Finding nos. 18 and 19. In Finding no. 18, the ALJ stated:

> The claimant was born on April 2, 1957. She remains a "younger individual' until April 2, 2007, when she became an individual "closely approaching advanced age." (20 CFR 404.1563). The claimant's educational level has not changed. Transferability of job skills remains immaterial, as explained in Finding #9.

(AR 42).[4]

In Finding no. 19, the ALJ stated:

> Beginning November 1, 2005, considering the claimant's age, education, work experience, and residual functional capacity, the claimant has been able to perform a significant number of jobs in the national economy (20 CFR 404.1560(c) and 404.1566).

---

[4] In Finding no. 9, the ALJ found that prior to July 1, 2002, plaintiff was "not disabled" under the grids (AR 35).

18

>       Beginning November 1, 2005, if the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rules 202.18 and 202.11. As before, the claimant cannot perform the full range of light work, but the vocational expert testified that jobs exist in significant numbers that she can perform. The jobs identified are the same as those described in finding #10. As noted, the vocational expert's testimony is consistent with the Dictionary of Occupational Titles.
>
>       Based on the testimony of the vocational expert, I conclude that beginning on November 1, 2005, the claimant has been capable of making a successful adjustment to work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rules.

(AR 42).

It appears that the ALJ utilized the Grids applicable on two different dates, November 1, 2005 (when plaintiff was 48) and sometime after April 2, 2007 (plaintiff's 50th birthday). Both of the Grids apply to individuals with a maximum sustained work capability limited to light work. Grid 202.11 applies to individuals closely approaching advanced age (i.e., people 50 years & older), with "limited or less" education, with previous work experience identified as "skilled or semiskilled - skills not transferable," and deems such a person "not disabled." Grid 202.18 applies to a younger individual (i.e., age 18 to 49), with "limited or less" education, with previous work experience identified as "skilled or semiskilled - skills not transferable," and deems such a person "not disabled." Plaintiff contends that, based upon Dr. Koutanis' report concluding that plaintiff could lift only five pounds, the ALJ should have used the grids applicable to sedentary work (AR 511). Specifically, plaintiff contends that she should have been found disabled under Grid 201.10, which applies to a person who can perform only sedentary work, is closely approaching advanced age, has "limited or less" education, and has previous work experience identified as "skilled or semiskilled - skills not transferable."

Whether the ALJ properly applied the Grids is an issue that cannot be determined until plaintiff's last insured date is established. If plaintiff's last insured date was December 1, 2004, and her disability terminated on November 1, 2005 (when plaintiff was 48), then there seems to be no reason for the ALJ to have evaluated plaintiff after that date. On the other hand, if plaintiff's last insured dated extended beyond her 50th birthday (April 2, 2007), then a review under the applicable Grid (202.11) could be relevant. In short, the court cannot determine whether the ALJ properly applied the Grids until plaintiff's last insured date is established. Accordingly, the Commissioner should address this issue on remand.

### IV. Recommendation

For the reasons discussed, I respectfully recommend that the Commissioner's decision be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g).

Dated: January 19, 2010 　　　　　　　　　　　　　/s/ Hugh W. Brenneman, Jr.
　　　　　　　　　　　　　　　　　　　　　　　　HUGH W. BRENNEMAN, JR.
　　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).